# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| PHILLIP VINCENT HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-0514-CV-W-GAF-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff, Phillip Vincent Harris, filed a claim for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*. Plaintiff's application was denied after initial administrative consideration. Thereafter, on June 23, 2008, following an evidentiary hearing, an administrative law judge ("ALJ"), found that Plaintiff was not under a "disability" as defined in the Act any time from November 11, 2004 (the alleged onset date of disability) through the date of the decision.

The ALJ determined that Plaintiff had severe bipolar affective disorder, obesity, and a history of substance abuse. The ALJ further found that Plaintiff had several significant mental limitations that prevented him from performing any work. However, as required under the pertinent regulations, the ALJ also determined Plaintiff's limitations absent the effects of drug and alcohol abuse. To that end, the ALJ found that Plaintiff would have some remaining mental limitations, including an inability to perform team work, even absent the effects of drug and alcohol abuse. After finding that Plaintiff could not perform any past relevant work, the ALJ relied on the testimony of a vocational expert to conclude that Plaintiff, however, could perform other work in the national economy.

On May 8, 2009, the Appeals Council of the Social Security Administration denied Plaintiff's request for further administrative review. Thus, the decision of the ALJ stands as the "final decision" of the Commissioner.

The standard of review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusion. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). A reviewing court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted). The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

To establish entitlement to disability benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 20 C.F.R. § 404.1505. The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212, 218-20, 122 S.Ct. 1265, 1270 (2002), upheld the

Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months.

According to the Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(J). Drug addiction or alcoholism is "material" if the individual would not still be found disabled if alcohol or drug use were to cease. 20 C.F.R. § 404.1535. The Commissioner does not have the burden of proving that substance abuse is material. Rather, an applicant seeking disability insurance and supplemental security income benefits carries the burden of proving that substance abuse was not a contributing factor material to the claimed disability. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005).

The Eighth Circuit clarified the analytical process that the ALJ must follow. *Brueggemann v. Barnhart*, 348 F.3d 689, 693-695 (8th Cir. 2003) (citing 20 C.F.R. §§ 404.1535, 416.935). The ALJ must first evaluate Plaintiff's substance abuse using the procedures set forth in the regulations. *Id.* The ALJ must evaluate Plaintiff's residual functional capacity ("RFC") when considering the use of alcohol. *Id.* Then, if Plaintiff is found disabled, the ALJ must evaluate what limitations would remain when the effects of substance abuse disorders were absent. *Id.* The ALJ specifically stated that he had considered Plaintiff's substance abuse and that Plaintiff's "impairments . . . make it impossible for him to adjust to jobs existing in significant numbers in the local or national economies. However, the medical evidence further shows that the inability to perform work is related in a material way to limitations stemming from substance abuse." The ALJ demonstrated

that he complied with both SSA regulations and *Brueggemann* by first determining that Plaintiff would be disabled while abusing substances.[1]

After evaluating the evidence, the ALJ determined that Plaintiff's statements regarding the severity of his symptoms were "not entirely credible." Credibility questions concerning Plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). To analyze a claimant's subjective complaints of pain, the ALJ must consider the entire record including the medical records, third party and Plaintiff's statements, as well as such factors as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for this finding, the court usually will defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (citing *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003)).

The ALJ determined Plaintiff had severe bipolar affective disorder, obesity, and a history of substance abuse. He discussed and analyzed the medical evidence of record at length.

Plaintiff's allegations of disabling obesity were inconsistent with the medical evidence of record. As the ALJ noted, physical examinations did not reveal any significant limitations. Providers noted that Plaintiff had full muscle strength and normal gait and station. Plaintiff's

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

treatment records mainly concern mental health issues rather than physical problems. The medical evidence of record failed to support Plaintiff's allegations of disabling obesity.

The medical evidence of record was also inconsistent with Plaintiff's allegations of disabling bipolar affective disorder. As Dr. Winfrey noted at the administrative hearing, Plaintiff's treatment was "primarily drug and alcohol related." In August 2006, Plaintiff underwent treatment at a psychiatric center. Dr. Cuezze noted that Plaintiff used marijuana, alcohol, and "illegally obtained benzodiazepines." About one month later, Plaintiff began a treatment program for his abuse of marijuana, cocaine, and alcohol. He reported recently using drugs and alcohol. Staff noted that Plaintiff recognized "the connections between his [drug and alcohol] use and mental illness." As the ALJ noted, diagnoses during the relevant time period included marijuana abuse, alcohol abuse, benzodiazepine abuse, and polysubstance dependence. Plaintiff's drug and alcohol use appeared to be the primary cause of his mental problems.

Evidence dated before Plaintiff's alleged onset date of disability also supports the ALJ's conclusion that Plaintiff experienced mental problems primarily due to drugs and alcohol. In May 2002, Plaintiff reported that he "felt that he was capable of functioning well when he was taking his medication" and not drinking or using drugs. About two months later, Plaintiff noted that "his mood [was] clearly modulated by alcohol and drug use." Plaintiff's psychiatric history reveals that he was hospitalized primarily due to drug and alcohol abuse.

Psychological testing also suggested that Plaintiff may have exaggerated some of his psychological symptoms. Dr. Lieberman noted that Plaintiff's symptoms were "over-reported and his problems exaggerated." Dr. Holzschuh noted that the validity scales on the MMPI suggested

5

that Plaintiff "tend[ed] to exaggerate his symptomatology." The medical evidence of record fails to support Plaintiff's claims of disabling bipolar affective disorder.

Plaintiff's statements concerning his drug use were also inconsistent with the medical evidence of record. Plaintiff testified that he had not used marijuana or cocaine since 2003. However, the medical evidence of record reveals significant drug abuse since 2003. In October 2004, Dr. Fadare noted that Plaintiff had been smoking crack. In 2006, Plaintiff reported significant drug abuse. Plaintiff specifically sought treatment for "use of crack, alcohol. and marijuana" in September 2006. These medical records detract from the credibility of Plaintiff's statements.

Plaintiff's failure to follow prescribed treatment also detracted from the credibility of his subjective allegations. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). In August 2006, staff encouraged Plaintiff to remain in the hospital for treatment, but Plaintiff left the hospital against this advice. In August 2007, Dr. Lieberman noted that Plaintiff refused all medication except for one psychotropic medication. Providers consistently referenced Plaintiff's non-compliance with treatment. The ALJ properly considered Plaintiff's failure to follow prescribed treatment as one factor in his credibility analysis.

The ALJ also correctly noted that Plaintiff failed to seek consistent treatment for his mental health problems. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Plaintiff missed several appointments with Dr. Fadare. *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008). As the ALJ correctly pointed out, there are few mental health treatment records after September 2006. The ALJ correctly considered Plaintiff's failure to seek treatment for his mental health problems.

Plaintiff argues that he regularly saw Dr. Fadare and that the lack of treatment records after September 2006 indicates that he made progress "with regard to substance abuse plus taking the

prescribed medication." While there is some evidence to suggest that Plaintiff began taking his prescribed medications in 2006, in August 2007, Dr. Lieberman noted that Plaintiff refused to take all medications except for one. In addition, Plaintiff reported improvement on medication in 2006, which suggests that his mental problems could be controlled. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). As noted above, the evidence showed that Plaintiff often missed appointments with Dr. Fadare. There are few treatment records after September 2006. The ALJ pointed out that this lack of evidence could mean that Plaintiff continued to abuse alcohol and drugs or that Plaintiff's mental problems significantly improved after abstaining from alcohol and drugs. In either case, the lack of treatment records supports the ALJ's decision that Plaintiff's mental problems were not disabling, absent the effects of drugs and alcohol.

Plaintiff's extensive daily activities were also inconsistent with his allegations of disability. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). Plaintiff testified at the administrative hearing that he had recently been performing warehouse and construction work. 20 C.F.R. § 404.1529(c)(3). He also stated that he enjoyed bowling, fishing, hunting, and playing pool, baseball, and football. In his function report, he noted that he had no problem with personal care and that he drove, shopped, cleaned, and sometimes prepared meals. Plaintiff's daily activities required complex cognitive skills and significant physical strength. They are inconsistent with his allegations of disability.

The ALJ explicitly found that Plaintiff's statements regarding the severity of his symptoms were "not entirely credible." The ALJ also outlined "good reasons" for this determination. *Casey*, 503 F.3d at 696 (citing *Gregg*, 354 F.3d at 714). The ALJ correctly found that inconsistencies with the medical evidence, Plaintiff's daily activities, his failure to follow prescribed treatment, and his

failure to seek consistent treatment all constituted good reasons for doubting the credibility of Plaintiff's subjective allegations. Because the ALJ outlined good reasons for discounting the credibility of Plaintiff's subjective allegations and relied on substantial evidence in the record in doing so, this Court should affirm the ALJ's credibility determination. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence.").

Plaintiff argues that the ALJ improperly analyzed the medical opinions of record. The ALJ acknowledged that Dr. Holzschuh, Dr. Lieberman, and Dr. Fadare opined that Plaintiff had significant limitations. Under the regulations, the ALJ was required to consider Plaintiff's limitations absent the effects of drug and alcohol abuse. *Contract with America Advancement Act of 1996*, Pub. L. No. 104-121, 110 Stat. 847 (*amending* 42 U.S.C. § 423(d)(2)); *see also* 20 C.F.R. § 404.1535(b)(1). In weighing the medical opinions, the ALJ properly considered whether physicians appeared to exclude or include the effects of drug and alcohol abuse. After engaging in this analysis, the ALJ properly gave the opinions of Dr. Holzschuh, Dr. Lieberman, and Dr. Fadare little weight because they were inconsistent with the medical evidence of record and their own reports. *Goff v. Barnhart*, 421 F.3d 785, 790-791 (8th Cir. 2005).

The ALJ correctly determined that Dr. Fadare's opinion deserved little weight. While Dr. Fadare referred to significant psychological symptoms, he also indicated that Plaintiff "seemed unwilling to participate or even to complete the assessment." In addition, Dr. Fadare's treatment notes are not detailed and fail to describe Plaintiff's daily functioning. 20 C.F.R. § 404.1527(d) (evidence source used to formulate opinion is a factor the ALJ may consider). It was also unclear

8

whether Dr. Fadare was including or excluding the effects of substance abuse when he gave his opinion.

Plaintiff references new evidence from Dr. Fadare that he attached to his brief. This new evidence is an undated mental impairment questionnaire filled out by Dr. Fadare. This evidence was not part of the administrative record and there is no indication that the ALJ or the Appeals Council considered this evidence at the time they made their decisions. To justify remand for consideration of new evidence, Plaintiff must show that the new evidence is material, that there was good cause for failure to incorporate that evidence into the record before the ALJ, that it is related to the relevant time period, and that the Commissioner would have awarded benefits had he considered this new evidence. *Jones v. Callahan*, 122 F.3d 1148 (8th Cir. 1997).

The ALJ's reasons for giving little weight to Dr. Fadare's opinion in his evaluation would also apply to Dr. Fadare's opinion in the mental impairment questionnaire. The ALJ noted that Dr. Fadare's opinion in his evaluation was inconsistent with the medical evidence of record, Plaintiff's daily activities, and the limited treatment record. The ALJ likely would have also given little weight to Dr. Fadare's opinion in the mental impairment questionnaire based on these reasons.

Dr. Fadare's opinion in the mental impairment questionnaire was inconsistent with the medical evidence of record, which showed that Plaintiff's mental problems appeared to be due primarily to drug and alcohol abuse. Dr. Fadare opined that, "independent of alcoholism and drug addiction," Plaintiff would still have poor or no ability in almost all areas "critical for performing unskilled work." This opinion was inconsistent with the opinion of the medical expert, Dr. Winfrey, who opined that, absent the effects of drug and alcohol abuse, Plaintiff could likely perform simple and unskilled work that was "somewhat repetitive in nature." *Goff*, 421 F.3d at 790-791. Dr.

9

Fadare's opinion was also inconsistent with Plaintiff's extensive daily activities and the limited treatment record after September 2006. *Owen*, 551 F.3d at 799-800 (noting that a claimant's daily activities and non-compliance were factors the ALJ could consider in discounting a treating physician's opinion). In addition, Dr. Fadare's limited treatment notes do not support his opinion. 20 C.F.R. § 404.1527(d). It is unlikely that the ALJ would have awarded benefits had he considered the new opinion evidence from Dr. Fadare.

The ALJ also gave Dr. Holzschuh's opinion little weight. Dr. Holzschuh examined Plaintiff only one time and appeared to give his opinion without the benefit of an accurate and complete psychiatric history. 20 C.F.R. § 404.1527(d); *Kelley*, 133 F.3d at 589; *Metz v. Shalala*, 49 F.3d 374, 378 (8th Cir. 1995). As the ALJ correctly noted, Dr. Holzschuh did not appear to be aware of Plaintiff's past substance abuse at the time of the examination. Dr. Holzschuh also noted that MMPI testing results indicated that Plaintiff "tend[ed] to exaggerate his symptomatology." It was also unclear whether the limitations Dr. Holzschuh opined Plaintiff had resulted from substance abuse or bipolar disorder.[2] Based on this evidence, the ALJ did not err in giving Dr. Holzschuh's opinion little weight.

Dr. Lieberman's opinion also deserved little weight. Dr. Lieberman also examined Plaintiff only one time. *Kelley*, 133 F.3d at 589; *Metz*, 49 F.3d at 378. She noted that Plaintiff's symptoms were "over-reported and his problems exaggerated." In addition, it was also unclear whether the limitations Dr. Lieberman opined Plaintiff had resulted from substance abuse or bipolar disorder. Substantial evidence supports the ALJ's decision to give Dr. Lieberman's opinion little weight.

---

[2]Dr. Holzschuh did not answer a question related to substance and alcohol abuse.

In order to clarify the issues related to Plaintiff's substance abuse, the ALJ asked the medical expert, Dr. Winfrey, to give her opinion regarding Plaintiff's limitations absent the effects of drug and alcohol abuse. Dr. Winfrey opined that, absent the effects of drug and alcohol abuse, Plaintiff could likely perform simple and unskilled work that was "somewhat repetitive in nature." The ALJ properly relied on Dr. Winfrey's testimony. 20 C.F.R. § 404.1527(f)(2). Substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

Plaintiff argues that the ALJ's RFC is deficient. However, after performing the above credibility analysis and carefully considering the entire record, the ALJ properly determined that Plaintiff, absent the effects of drug and alcohol use, retained the RFC to perform at least medium work with some exceptions due to his mental impairment. The ALJ found that Plaintiff would be limited to simple, repetitive, and unskilled work, with "only occasional interaction with co-workers and supervisors," "no contact with the general public," and no work as part of a team.

The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 404.1545; SOCIAL SECURITY RULING 96-8p. The RFC formulation is a part of the medical portion of a disability adjudication as opposed to the vocational portion which involves consideration of age, education, and work experience. Although it is a medical question, it is not based only on "medical" evidence, i.e., evidence from medical reports or sources; rather an ALJ has the duty to formulate the RFC based on all the relevant, credible evidence of records. *McKinney*, 228 F.3d at 863 (the Commissioner "must determine a claimant's RFC based on all of the relevant evidence, including

11

the medical records, observations of treating physicians and others, and an individual's own description of his limitations").

Plaintiff argues that the ALJ failed to consider all of his mother's responses in a questionnaire regarding his functioning. However, the ALJ did discuss and consider Plaintiff's mother's report. Plaintiff's mother opined that he had difficulty understanding, following instructions, and completing tasks. She also opined that Plaintiff had difficulty with memory and concentration. While the ALJ did not mention all of the mother's responses in his decision, his failure to do so does not mean that he did not consider those responses. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). The ALJ did find that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. In his RFC, the ALJ limited Plaintiff to simple, repetitive, and unskilled work. These are significant mental limitations that account for the difficulties Plaintiff's mother noted in her report. Substantial evidence supports the ALJ's determination of Plaintiff's RFC.

After finding that Plaintiff could not perform his past relevant work, the ALJ relied on the testimony of the vocational expert to conclude that Plaintiff could perform other work in the national economy. When posed with the ALJ's RFC findings in a hypothetical question, the vocational expert responded that such a person could perform the light, unskilled jobs of reducing machine operator and wire prep machine tender, and the medium, unskilled jobs of bit sharpener and cut-off saw tender. The question was properly formulated, so the expert's testimony that Plaintiff could perform other work constitutes substantial evidence supporting the Commissioner's decision. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); *Miller v. Shalala*, 8 F.3d 611, 613-14 (8th Cir. 1993).

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

                                                                     s/ Gary A. Fenner
                                                                     Gary A. Fenner, Judge
                                                                     United States District Court

DATED: May 12, 2010